# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **WILLIAM M. GAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:16-cv-00018** |
| ) | **Judge Nixon / Knowles** |
| **DERRICK SCHOFIELD,** ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.

Docket No. 10. As grounds for his Motion, Defendant argues that Plaintiff did not exhaust his

administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. §1997e(a). *Id.* Along with his Motion, Defendant contemporaneously

filed a supporting Memorandum of Law (Docket No. 11), a Statement of Material Facts (Docket

No. 12), the Affidavit of Commissioner Derrick Schofield ("Def. Aff.") (Docket No. 13), the

"Affidavit of Custodian Certifying Records" ("Bean Aff.") (Docket No. 14), and the Affidavit of

Tashonda Burton ("Burton Aff.") (Docket No. 15).

Plaintiff has not responded to Defendant's Motion or Statement of Material Facts, nor has

he filed his own Statement of Material Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging

that he was discriminated against because he was denied a prosthetic arm when other inmates had

them.  Docket No. 1.  Plaintiff seeks the furnishment of a prosthetic arm, as well as $200,000 for

his "pain and suffering."  *Id.*

## II.  Undisputed Facts[1]

### A.  Allegations of Plaintiff's Verified Complaint

The factual allegations of Plaintiff's Verified Complaint, in their entirety, are as follows:

> I have one arm.  I've had a prosthetic arm.  I can't function without
> it.  When I was sentenced to prison I had to mail my prosthetic arm
> home due to it having a metal hook.  I found out that other inmates
> confined within the Tennessee Department of Correction was
> furnished prosthetic arms thru the medical department.
>
> I then went to the medical department, and spoke with Dr. Lane.
> He told me I would need approval from Warden Shawn Phillips.
> And he would talk with Mr. Shawn Phillips.  I never received any
> response.  I then went back to Dr. Lane.  He told me the Warden
> denied my arm request.  At that time I filed a grievance.
>
> I was then denied again.  Due to other inmates having prosthetic
> arms, and mine being denied, I then filed discrimination Title VI.
> AWS Warden Mr. Gary Hamby responded by appointing the
> medical staff to respond.  I explained all this to medical again, she
> medical told me I could not have a prosthetic arm, per
> Commissioner Derrick Schofield's order.
>
> I'm now filing a civil suite [*sic*] against the Tennessee Department
> of Correction.

Docket No. 1.

### B.  Affidavit of Commissioner Derrick Schofield

Defendant is employed by the Tennessee Department of Correction ("TDOC") as the

Commissioner.  Def. Aff., ¶ 1.  Defendant has had no personal involvement in rendering any

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

medical care or treatment to Plaintiff, nor does he have personal knowledge of Plaintiff, outside of the fact that Plaintiff named him as a Defendant in this action. *Id.*, ¶ 2. Defendant has played no role in the decision-making process regarding his medical care or treatment, nor has he had any personal involvement in denying a prosthetic arm for Plaintiff, if a prosthetic device was denied. *Id.*, ¶ 3.

Defendant does not recall receiving any oral or written communication from Plaintiff or his mother regarding obtaining a prosthetic arm for Plaintiff. *Id.*, ¶ 4. If Plaintiff filed a grievance regarding his complaints about his prosthetic arm, Defendant is not aware that such a grievance was filed, nor did Defendant respond to such a grievance. *Id.*, ¶ 5.

## C. Affidavit of Benjamin F. Bean, Correctional Program Manager and Custodian Certifying Records

Benjamin Bean is employed by TDOC as a Correctional Program Manager. Bean Aff., ¶ 1. In that capacity, Mr. Bean serves as the designee for the Deputy Commissioner of Operations for the review and response to the Level III Grievance Appeals that are appealed to the Deputy Commissioner. *Id.* As such, Mr. Bean is the duly authorized custodian of the grievance record that is attached to his Affidavit that serves as the basis for the Level III Grievance Appeal Decision. *Id.*, ¶ 2. The submitted grievance record is a true and correct copy of the original, was kept in the course of the regularly conducted business activities of TDOC, was prepared as a regular practice and custom by the personnel of the Morgan County Correctional Complex and/or TDOC in the ordinary course of business, by a person or persons with knowledge of and a business duty to record or transmit those matters. *Id.*, ¶¶ 3, 4, 5.

Plaintiff's grievance record does not contain specific allegations against Defendant, nor

does it name Defendant. *See* Certified Prison Grievance Documents for grievance #288014. A review of Plaintiff's grievance record reveals that Plaintiff did not properly file a grievance related to the issues raised in this action and appeal it to the final level of the appeal process. *Id.*

## D. Affidavit of Tashonda Burton

Tashonda Burton is employed by TDOC as the Inmate Correspondence Coordinator. Burton Aff., ¶ 1. Ms. Burton has reviewed the Commissioner's mail log for the years 2014, 2015, and 2016, for any correspondence from Plaintiff or his mother, but she did not find any correspondence from either. *Id.*, ¶ 2. Ms. Burton has also reviewed the Governor's IQ system, which may also indicate that correspondence was received from these individuals, and found no matches for either Plaintiff or his mother. *Id.*, ¶ 3.

## III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on February 24, 2016. Docket No. 10. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the

motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. . . .

. . .

**g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Material Facts or file his own Statement of Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

[A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden . . . The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor*

*Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

### 1.  Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

*See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313

U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall
> be brought with  respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies . . . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute.

Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

                              . . .

> For the reasons stated, we hold that the PLRAs exhaustion
> requirement applies to all inmate suits about prison life, whether they
> involve general circumstances or particular episodes, and whether
> they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

**E.  The Case at Bar**

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the

case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a).  He is,

therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that Plaintiff filed a grievance related to his not being given a prosthetic

arm.  *See* Certified Copy of Grievance No. #288014, contained in the submitted grievance record.

It is also undisputed, however, that Plaintiff's grievance neither mentions Defendant nor

addresses Defendant's alleged denial of his request for a prosthetic arm.  *Id.*  Because Plaintiff's

grievance neither mentions Defendant nor addresses Defendant's alleged denial of his request for

a prosthetic arm, Plaintiff has failed to exhaust his administrative remedies as required by the

PLRA, and Defendant is entitled to a judgment as a matter of law.

Additionally, 42 U.S.C. § 1983 does not permit the imposition of liability based upon

*respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed.

2d 509 (1981).  *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037,

56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir.

1996).

In order for Defendant to be held liable in his individual capacity, Plaintiff must

demonstrate that Defendant personally condoned, encouraged, or participated in the conduct that

allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

In the instant action, the only involvement Plaintiff alleges that Defendant had was that "she medical" told him that, per Defendant's order, he could not have a prosthetic arm. Docket No. 1. It is undisputed that Defendant has had no personal involvement in rendering any medical care or treatment to Plaintiff, nor does he have personal knowledge of Plaintiff, outside of the fact that Plaintiff named him as a Defendant in this action. Def. Aff., ¶ 2. It is further undisputed that Defendant has played no role in the decision-making process regarding Plaintiff's medical care or treatment, nor has he had any personal involvement in denying a prosthetic arm for Plaintiff, if a prosthetic device was denied. *Id.*, ¶ 3. Finally, it is undisputed that Defendant does not recall receiving any oral or written communication from Plaintiff or his mother regarding obtaining a prosthetic arm for Plaintiff, and that Defendant is not aware that Plaintiff filed a grievance regarding obtaining a prosthetic arm, nor did Defendant respond to such a grievance. *Id.*, ¶¶ 4, 5.

Because Defendant lacks the requisite personal involvement and 42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*, Plaintiff cannot sustain his claim against Defendant. Defendant is, therefore, entitled to a judgment as a matter of law on this basis as well.

## IV. Conclusion

For the foregoing reasons, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, as required by the PLRA. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 10) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge